**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH GREGORIO, PATRICK QUIROZ, and ADAM COOPER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>THE CLOROX COMPANY,<br><br>Defendant. | Case No.  4:17-cv-03824-PJH<br><br>**STATEMENT OF RECENT DECISION IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, STRIKE CERTAIN ALLEGATIONS**<br><br>Judge:  Hon. Phyllis J. Hamilton |

1   Pursuant to Local Rule 7-3(d)(2), Plaintiffs Joseph Gregorio, Patrick Quiroz, and Adam
2   Cooper (collectively, "Plaintiffs"), through their undersigned counsel, submit this Statement of
3   Recent Decision to alert the Court to a relevant opinion from this District published after Plaintiffs
4   filed their Opposition to Defendant's Motion to Dismiss, or in the Alternative, Strike Certain
5   Allegations (Dkt. No. 43). Attached hereto as Exhibit A is the Order Denying Defendants' Motion
6   to Dismiss or Stay in *Pechana et al. v. The Hain Celestial Group, Inc.*, Case No. 3:17-cv-04517-
7   EMC (N.D. Cal. Jan. 24, 2016) (Dkt. No. 29).

Dated: January 24, 2018   **BURSOR & FISHER, P.A.**

By:   */s/ L. Timothy Fisher*
      L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Email:  ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com

**RICHMAN LAW GROUP**
Kim E. Richman (*Pro Hac Vice*)
Jaimie Mak (SBN 236505)
535 Mission Street
San Francisco, California 94105
Telephone: (415) 259-5688
Facsimile: (718) 228-8522
E-Mail:  krichman@richmanlawgroup.com
         jmak@richmanlawgroup.com

**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**
Todd S. Garber (*Pro Hac Vice* forthcoming)
Bradley F. Silverman (*Pro Hac Vice* forthcoming)
445 Hamilton Avenue, Suite 605

White Plains, New York 10601
Telephone: (914) 298-3283
Email: tgarber@fbfglaw.com
bsilverman@fbfglaw.com

*Co-Interim Class Counsel*

**EXHIBIT A**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAKINDE PECANHA, et al.,<br><br>             Plaintiffs,<br><br>     v.<br><br>THE HAIN CELESTIAL GROUP, INC., et al.,<br><br>             Defendants. | Case No. 17-cv-04517-EMC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR STAY**<br><br>Docket No. 29 |

Plaintiffs Makinde Pecanha and Shaun Ray Bell have filed a class action against Defendants The Hain Celestial Group, Inc. ("Hain") and JĀSÖN Natural Products, Inc. ("JNP"), asserting claims for, *inter alia*, false advertising and breach of warranty based on Defendants' marketing of their JĀSÖN® deodorant products as "Naturally Fresh" and "Pure Natural" when in fact they contain synthetic ingredients. Defendants have moved to dismiss the first amended class action complaint ("FAC") or, alternatively, to stay based on primary jurisdiction of the FDA. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** Defendants' motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

In their FAC, Plaintiffs allege as follows.

Hain is a company that focuses on food and personal care products. One of its brands is the JĀSÖN® brand, which covers personal care products. *See* FAC ¶ 2. Hain, along with JNP, promote the JĀSÖN® brand "as a leader in natural cosmetics." FAC ¶ 2.

At issue in the instant case are JĀSÖN® deodorant products. The front packaging for the deodorant products use one or more of the following labels: "Naturally Fresh," "Pure Natural Deodorant," "Pure Natural Deodorant Stick," and/or "Natural Pioneer Since 1959." FAC ¶ 5.

Although the labels use the term "natural" in some form, the deodorant products actually use synthetic ingredients – namely, tocopheryl acetate, glycerin, and ethylhexylglycerin.

- "Tocopherol acetate is a synthetic, inert ingredient which is used pre- and post-harvest as an ingredient in pesticide formulations applied to growing crops or to raw agricultural commodities after harvest."  FAC ¶ 7.
- "Glycerin is a factory-produced texturizer that is created by a complex process, used as a filler and thickening agent."  FAC ¶ 7.
- "Ethylhexylglycerin is a synthetic conditioning agent and preservative."  FAC ¶ 7.

Based on, *inter alia*, the above allegations, Plaintiffs have asserted the following causes of action:

(1) Violation of the California Consumer Legal Remedies Act ("CLRA").  *See* Cal. Civ. Code § 1750 *et seq.*

(2) Violation of California Business & Professions Code § 17200.

(3) Violation of California Business & Professions Code § 17500.

(4) Breach of express warranty.

(5) Unjust enrichment.

(6) Fraud.

## II.  DISCUSSION

A.  Legal Standard

The bulk of Defendants' motion is a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

> To survive a [12(b)(6)] motion to dismiss for failure to state a claim after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), [a plaintiff's] factual allegations [in the complaint] "must . . . suggest that the claim has at least a plausible chance of success."  In other words, [the] complaint "must allege 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"
>
> . . . . [The Ninth Circuit has] settled on a two-step process for evaluating pleadings:

2

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1134-35 (9th Cir. 2014).

Notably,

> [t]he plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility 'of entitlement to relief.'"

*Iqbal*, 556 U.S. at 678.

As for Rule 9(b), it provides that, "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Ninth Circuit has explained that this means that

> the circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false."

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

B.  <u>Fraud-Based Claims – Use of the Term "Natural"</u>

Plaintiffs' fraud-based claims are predicated on Defendants' use of the term "natural" on the labeling for the deodorant products. Plaintiffs charge Defendants with using the term "natural" in the following ways: "Naturally Fresh," "Pure Natural Deodorant," "Pure Natural Deodorant Stick," and/or "Natural Pioneer Since 1959." FAC ¶ 5. According to Plaintiffs, these phrases are misleading because the deodorant products actually contain synthetic ingredients. In response, Defendants argue that the phrases are not misleading because they do not make claims of "*all*

3

1  natural" or "*100%* natural." (Defendants apparently concede that a label of "all natural" or "100%
2  natural" would be misleading if the product bearing the label contained synthetic ingredients.)
3  Defendants also argue that the phrases used on the label for the deodorant must be viewed in
4  context – not only the front of the label (which further states that the deodorant contains no
5  aluminum, parabens, phthalates, or propylene glycol) but also the back (which displays the
6  ingredient list).

7  As the Court acknowledged at the hearing, it is a close question as to which party has the
8  better argument. Indeed, the parties have cited district court opinions that go both ways, and those
9  opinions are not always reconcilable or easily distinguishable. *Compare, e.g.*, *In re 100% Grated
10 Parmesan Cheese Mktg. & Sales Practices Litig.*, No. 16 C 5802, 2017 WL 3642076 (N.D. Ill.
11 Aug. 24, 2017); *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754 (W.D. Mo. 2015); *Pelayo
12 v. Nestle USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal. 2013)[1]; *with Segedie v. Hain Celestial Grp.,
13 Inc.*, No. 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739, at *29 (S.D.N.Y. May 7, 2015); *Jou
14 v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 U.S. Dist. LEXIS 173216 (N.D. Cal. Dec.
15 10, 2013); *Campen v. Frito-Lay N. Am., Inc.*, No. 12-1586 SC, 2013 U.S. Dist. LEXIS 47126, at
16 *35-36 (N.D. Cal. Apr. 1, 2013).

17 The Court, however, must begin with the Ninth Circuit's directive that "whether a business
18 practice is deceptive will usually be a question of fact not appropriate for decision on" a motion to
19 dismiss. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Indeed, the Ninth
20 Circuit has characterized it as a "rare situation" where "granting a motion to dismiss is
21 appropriate." *Id.* at 939. Thus, in the instant case, unless the Court could say, as a matter of law,
22 that no reasonable consumer could be deceived by Defendants' use of the term "natural," then
23 Defendants' motion should be denied.

24 In the instant case, Plaintiffs charge Defendants with using the term "natural" in the
25 following ways: "Naturally Fresh," "Pure Natural Deodorant," "Pure Natural Deodorant Stick,"

---

[1] *But see Tsan v. Seventh Generation, Inc.*, No. 15-cv-00205-JST, 2015 U.S. Dist. LEXIS 149042, at *14 (N.D. Cal. Nov. 3, 2015) (stating that "*Pelayo*'s reasoning has been heavily criticized by other courts").

4

and/or "Natural Pioneer Since 1959." FAC ¶ 5. While, arguably, no reasonable consumer would infer that the deodorant products are "all natural" based solely on the phrase "Natural Pioneer Since 1959," it appears that that phrase was used in conjunction with one of the other phrases – "Naturally Fresh" and "Pure Natural" – *see, e.g.*, FAC ¶ 24, which are more problematic. For example, although Defendants contend that "Pure Natural" differs from "100% natural," the phrase "Pure Natural" may be tantamount to, or at least could reasonably be understood to mean, "all natural" or "100% natural." Notably, "pure" is defined by Merriam-Webster as, *inter alia*, "unmixed with any other matter," "free from dust, dirt, or taint," "free from what vitiates, weakens, or pollutes," and "containing nothing that does not properly belong." https://www.merriam-webster.com/dictionary/pure?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last visited January 22, 2017). The distinction between "Pure Natural" and "100% natural" is not as sharp as Defendants contend.

In *Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 U.S. Dist. LEXIS 173216 (N.D. Cal. Dec. 10, 2013), Judge Corley found that a similar phrase – "pure and natural" – used to describe diapers[2] "could plausibly deceive a reasonable consumer. The packaging prominently displays the term 'pure & natural,' which could lead a reasonable consumer to believe that that the product is free of non-natural ingredients when it actually contains polypropylene and sodium polyacrylate." *Id.* at *22 (also noting that "the front of the packaging is adorned with a green banner and images of leaves" which "reinforces the reasonable consumer's belief that the diapers are entirely natural"). Judge Corley also underscored that a "recent case in this District . . . analyzed the phrases '100% Natural,' 'All Natural,' and [even plain] 'Natural' interchangeably in denying the defendant' motion to dismiss. At no point in the analysis was the absence of '100%' or 'All' from the term 'Natural' significant in determining the deceptiveness of the 'Natural' representation on the packaging of a granola bar that included synthetic ingredients." *Id.* at *25;

---

[2] At the hearing, Defendants noted that *Jou* also involved baby wipes. However, "pure and natural" was used to describe the diapers only. The baby wipes were described as "Natural Care." *See Jou*, 2013 U.S. Dist. LEXIS 173216, at *1-3.

5

*see also Segedie*, 2015 U.S. Dist. LEXIS 60739, at *29 (stating that "[i]t is not unreasonable as a matter of law to expect that a product labeled 'natural' or 'all natural' contains only natural ingredients"). Judge Corley acknowledged that "the use of 'all' in 'all natural' may make the inference even more plausible than the inference arising from the use of just 'natural,' the use of 'natural' still provides the plausible inference required to defeat a Rule 12(b)(6) motion." *Jou*, 2013 U.S. Dist. LEXIS 173216, at *27 (emphasis omitted); *see also id.* at *29 (adding that "[w]hether a reasonable consumer would agree with Plaintiffs ('natural' means no non-natural ingredients) or with Defendant ('natural' means at least one natural ingredient among other, possibly non-natural ingredients) or with neither is not a question that can be resolved on a Rule 12(b)(6) motion").

Defendants protest that the use of the term "natural" on the deodorant products cannot be viewed in a vacuum; rather, the term must be taken in context, in particular, other information on the front of the label. Defendants highlight that the front of the label also displays prominently the following phrase: "NO ALUMINUM, PARABENS, PHTHALATES, OR PROPYLENE GLYCOL." According to Defendants, "[w]hen viewed 'as a whole,' the reference to 'natural' or 'naturally' refers to the fact that there is 'no aluminum, parabens, phthalates, or propylene glycol' in the deodorants," Mot. at 1, not that the deodorant product is 100% natural in all respects. The problem for Defendants is that, while a reasonable consumer might plausibly so interpret the label, that does not mean that a reasonable consumer could not have a different interpretation. For instance, it is plausible that a reasonable consumer could view the "no aluminum" language as a *reinforcement or illustrative* of the term "natural" – *i.e.*, "natural" means, in particular, that there is no aluminum, parabens, phthalates, or propylene glycol in the product. That would not preclude an assumption that, in addition to these four prominent substances, there are no other non-natural ingredients. *Cf. Anderson v. Hain Celestial Grp., Inc.*, 87 F. Supp. 3d 1226, 1237 (N.D. Cal. 2015) (Davila, J.) (in response to defendant's argument that "other information on the Sunflower Dream Drink's label clarifies that the 'All Natural' statement refers only to the sunflower seeds used to manufacture the product and does not refer to the naturalness of the product as a whole," stating that "[i]t cannot be confidently said, looking only at the label, that use of the word 'natural'

6

in other less prominent locations renders 'it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived' by the 'All Natural' statement placed conspicuously on the front of the product, independent of any reference to sunflower seeds").

Defendants contend that, at the very least, there is ambiguity because of the "no aluminum" language and, once there is ambiguity, it is, in essence, the duty of the consumer to look at the ingredient list on the back of the label to clarify any ambiguity.[3] As an initial matter, it is not clear that that is the law, at least in the Ninth Circuit. No Ninth Circuit case holds such, including but not limited to *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (in a case involving language used in a sweepstake promotion (*i.e.*, no ingredient lists were involved), rejecting plaintiff's argument that a certain inference could be made from the language because of the "context of the entire document"; "[a]ny ambiguity that [the plaintiff] would read into any particular statement is dispelled by the promotion as a whole"); *Williams*, 552 F.3d at 939-40 (rejecting the argument that "reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box"; "reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging"); and *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) (characterizing *Williams* as "stand[ing] for the proposition that if the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception").

While some district court opinions may be read to support Defendants' position, *see 100% Grated Parmesan Cheese*, 2017 WL 3642076, at *6 (distinguishing *Williams* because, there, "the allegedly deceptive term 'Fruit Juice' on the front of the package was an affirmatively false impression; there was no ambiguity"); *Workman v. Plum*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (Alsup, J.) (holding that no reasonable consumer would "view pictures on the packaging of a puree pouch or box of fruit bars and assume that the size of the items pictured directly correlated with their predominance in the blend"; then adding – in what appears to be dicta – "any potential

---

[3] Apparently, the synthetic ingredients identified by Plaintiffs in their complaint all appear on the ingredient lists for the deodorant products.

7

1     ambiguity could be resolved by the back panel of the products, which listed all ingredients in order
2     of predominance, as required by the FDA"), those cases are not binding authorities. Moreover,
3     there is authority to the contrary. *See, e.g.*, *Campen*, 2013 U.S. Dist. LEXIS 47126, at *35-36
4     (stating that "a reasonable consumer *could* interpret a bag of chips claiming to have been 'Made
5     with ALL NATURAL Ingredients' to consist exclusively of natural ingredients, contrary to the
6     reality described in the nutrition box [and], [e]ven though the nutrition box could resolve any
7     ambiguity, the Court cannot conclude *as a matter of law, in the context of a Rule 12(b)(6) motion*,
8     that no reasonable consumer would be deceived by the "Made with ALL NATURAL Ingredients"
9     labels") (emphasis added).

10    Finally, even crediting Defendants' ambiguity argument, Defendants still would not
11    prevail at this juncture of the proceedings because, as Plaintiffs point out, it is not readily apparent
12    that the ingredient list would be helpful – *i.e.*, it is not clear that a reasonable consumer would be
13    able to determine whether the ingredients on the ingredient list were natural or synthetic. The
14    ingredient list provided by Defendants lists many chemicals but a chemical is not necessarily
15    synthetic. Hence, the inclusion of an ingredient list does not warrant, at this 12(b)(6) juncture,
16    judgment as a matter of law.

17    The Court thus denies Defendants' motion to dismiss the fraud-based claims.

18    C.    Primary Jurisdiction Doctrine

19    With respect to the fraud-based claims, Defendants argue that, if the Court is not inclined
20    to dismiss, then it should at the very least stay the claims (and presumably the entire case since it
21    is largely predicated on the fraud claims) based on the primary jurisdiction doctrine. More
22    specifically, Defendants argue that the Court should stay the case to see what further guidance is
23    given by the FDA with respect to the term "natural." According to Defendants, there is "ongoing
24    FDA regulatory review of the meaning of the word natural," Mot. at 12, based on the FDA's
25    November 2015 request for comments "on the use of the term 'natural' in the labeling of human
26    food products, including foods that are genetically engineered or contain ingredients produced
27    through the use of genetic engineering." Defs.' RJN, Ex. 8 (FDA notification of request for
28    comments). Defendants admit that this case involves the personal care/cosmetics industry and not

8

the food industry, but argue that "many of the ingredients challenged in 'all natural' food cases are also used in personal care products" – *e.g.*, glycerin. Mot. at 14.

"Primary jurisdiction is a prudential doctrine that permits courts to determine 'that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015). "Not every case that implicates the expertise of federal agencies warrants invocation of primary jurisdiction. Rather, the doctrine is reserved for a 'limited set of circumstances' that 'requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Id.* A court has discretion as to whether to stay a case based on the primary jurisdiction doctrine.

> [C]ourts in considering the issue have traditionally employed such factors as (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration.

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).

According to Defendants, the above factors weigh in favor of a stay in the instant case, particularly as the Ninth Circuit just "last year directed a district court to stay a case alleging that Chobani deceptively and unlawfully labels its yogurt as 'natural' in violation of FDA regulations 'until such time as the [FDA] completes its proceedings' on the use of the term 'natural' in food labeling." Mot. at 13 (quoting *Kane v. Chobani, LLC*, 645 Fed. Appx. 593, 594 (9th Cir. 2016)[4]).

In assessing Defendants' argument on primary jurisdiction, the Court begins with the Ninth Circuit's *Astiana* decision. There, the Ninth Circuit acknowledged that "defining what is 'natural' for cosmetics labeling is both an area within the FDA's expertise and a question not yet addressed

---

[4] *Kane* involved the use of the term "evaporated cane juice" (and not just "natural"). With respect to "evaporated cane juice," the Ninth Circuit noted that, "in July 2015, the FDA represented that it expects to issue final guidance on the term . . . by the end of 2016." *Kane*, 645 Fed. Appx. at 594. Because of "the ongoing FDA proceedings regarding the terms 'natural' *and* 'evaporated cane juice,'" the Ninth Circuit held that a stay was appropriate. *Id.* (emphasis added).

9

by the agency." *Astiana*, 783 F.3d at 760. However, the court went on to say that a court must "consider whether invoking primary jurisdiction would needlessly delay the resolution of the claims"; "'efficiency' is the 'deciding factor' in whether to invoke primary jurisdiction." *Id.* The court continued:

> Common sense tells us that even when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation. Similarly, primary jurisdiction is not required when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make.

*Id.* at 761.

In *Astiana*, the Ninth Circuit found that Judge Hamilton "did not err in invoking primary jurisdiction" because "[d]etermining what chemical compounds may be advertised as natural on cosmetic product labels is 'a particularly complicated issue that Congress has committed to' the FDA" and it was not unreasonable to think that new guidance would be forthcoming based on the debate over the use of the term "natural" in food labeling. *See id.* But the Ninth Circuit held that Judge Hamilton should have stayed the case, not dismissed it, and then directed Judge Hamilton, on remand, to

> consider whether events during the pendency of [the] appeal – including [the plaintiff's] informal letter [asking for agency guidance on the use of the term 'natural' in the personal care industry], the FDA's website publication of a Small Business Fact Sheet regarding cosmetics labeling, and the FDA's response to the other courts – affect the need for further proceedings at the FDA or demonstrate that another referral to the agency would be futile.

*Id.* at 762.

On remand, Judge Hamilton noted that the FDA had responded to the plaintiff's informal letter, stating that "it would not take any action on the 'natural' definition without going through a notice-and-comment process." *Astiana v. Hain Celestial Grp., Inc.*, No. 11-cv-6342-PJH, 2015 U.S. Dist. LEXIS 138496, at *3 (N.D. Cal. Oct. 9, 2015). The letter also stated that the agency's "resources are fully occupied with health and safety matters, so proceedings to define 'natural' do not fit within our current health and safety priorities'" and so "'we respectfully decline to make a determination regarding the term "natural" in cosmetic labeling at this time.'" *Id.* at *3-4. Based

10

on the FDA's letter, Judge Hamilton held that the agency was aware of but expressed no interest in the subject matter of the litigation and thus denied the defendant's motion to stay based on the need for a FDA referral. Judge Hamilton did ultimately stay proceedings but on nonprimary jurisdiction grounds.

Based on the *Astiana* proceedings, at least one district court has declined to grant a stay where a defendant has invoked the primary jurisdiction doctrine with respect to the use of the word "natural" in the personal care/cosmetics (as opposed to food) industry. More specifically, in *Brenner v. Proctor & Gamble Co.*, No. SACV 16-1093-JLS (JCGx), 2016 U.S. Dist. LEXIS 187303 (C.D. Cal. Oct. 20, 2016), the court held that, "at this point, a stay under the primary jurisdiction doctrine would be improper because the FDA is aware of the controversy surrounding 'natural'-branded cosmetics but has chosen not to prioritize the issuance of any definition of the term," and so "holding this case in abeyance indefinitely would not serve the efficiency principle underling the primary jurisdiction doctrine." *Id.* at *22-23. The court added that the FDA's November 2015 request for comments on the use of the term natural in the food industry "does not suggest that the agency will also take immediate action to define the proper scope of 'natural' claims relating to cosmetics" – indeed, "Defendant has not provided a single case where a district court in this Circuit stayed a case relating to a 'natural' label on a cosmetic under the primary jurisdiction doctrine pending the outcome of these FDA proceedings." *Id.* at *23-24 (emphasis omitted). Other district courts have ruled similarly. *See, e.g.*, *Gasser v. Kiss My Face, LLC*, No. 17-cv-01675-JSC, 2017 U.S. Dist. LEXIS 175273, at *30 (N.D. Cal. Oct. 23, 2017) (noting "there is no pending proceeding or date in sight, and no evidence that a definition for 'natural' is being contemplated for cosmetics"); *Segedie*, 2015 U.S. Dist. LEXIS 60739, at *35 (stating that the primary jurisdiction doctrine does not "bar the Natural Claims"; "reject[ing] Defendant's assertion that the FDA will imminently regulate the term 'natural'" as "[t]he FDA has declined to adopt formal rulemaking to define 'natural' despite repeated applications by various stakeholders"); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 477 (S.D.N.Y. 2014) (noting that "the FDA has not begun to promulgate a rule concerning the term 'natural' in cosmetics" and "recently declined to make such a determination"; this "weighs against applying

11

the primary jurisdiction doctrine, especially considering that decisions from various district and appellate courts regularly conflict"); *Fagan v. Neutrogena Corp.*, No. 5:13-cv-01316-SVW-OP, 2014 U.S. Dist. LEXIS 2795, at *3 (C.D. Cal. Jan. 8, 2014) (holding that "Plaintiffs' claims are not barred by the doctrine of primary jurisdiction" based on allegation that "FDA has affirmed that 'proceedings to define the term "natural" [in the context of cosmetics] do not fit within [its] current health and safety priorities'").

Defendants point to no specific FDA action reasonably anticipated in the near future which warrants delaying this case. The Court therefore declines to stay proceedings based on the primary jurisdiction doctrine.

D. All Claims Asserted Against Hain

Defendants contend that, even if the Court rejects their arguments above, dismissal of all claims against Hain is warranted because it simply the parent company of JNP and Plaintiffs have failed to allege any specific wrongdoing by Hain itself.

The Court does not agree. Plaintiffs have alleged enough to overcome the 12(b)(6) challenge. They have alleged that Hain itself – and not just JNP – manufactured, sold, and marketed the deodorant products at issue, *see* FAC ¶ 17 (alleging that "Defendants produce, market and distribute various consumer skin care and hygiene products in retail stores across the United States," including the deodorant products at issue); FAC ¶ 21 (alleging that the JĀSÖN® brand is manufactured and marketed by Defendants"), and there appears to be a good faith basis for this allegation, as Plaintiffs explain in their opposition brief. For example, Exhibit 9 of Plaintiffs' Request for Judicial Notice is Hain's 10-K filed with the SEC. On page 5, Hain notes that it has "acquired numerous companies and brands since our formation" and "[o]ur business strategy is to integrate our brands under one management team within each operating segment and employ uniform marketing, sales and distribution programs when attainable." Pls.' RJN, Ex. 9 (10-K at 5). From this statement, it is a reasonable inference that Hain has a role in the marketing of the JĀSÖN® brand products, including how they are marketed as "natural."

E. Fraud-Based Claims – Economic Injury

As to the fraud-based claims, Defendants also make a Rule 9(b) argument. According to

12

1  Defendants, based on Rule 9(b), Plaintiffs must plead with "with particularity that they suffered
2  economic injury in reliance on the alleged misrepresentations" – *i.e.*, that they paid a price
3  premium for the deodorant products because they are "natural." Mot. at 16. Defendants continue:

> [W]hile Plaintiffs' FAC now alleges the approximate amount they paid for the JĀSÖN deodorant products, they have not alleged any of the other factual predicates for this theory, including the *identity* or the *cost* of comparable deodorant products (which would establish the benchmark price relative to which JĀSÖN allegedly charged a price premium) or the *size* of the price premium they allegedly paid.

Mot. at 17 (emphasis added).

The problem for Defendants is that they have failed to cite any authority to support the proposition that this is the level of specificity required by Rule 9(b) – *i.e.*, that Plaintiffs' allegation that they paid a premium for "natural" products is not enough.

> Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints "as a pretext for the discovery of unknown wrongs"; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to "prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Defendants have failed to explain how the level of specificity they demand serves any of the above purposes.

F.   Warranty Claim

Defendants argue next that the warranty claim should be dismissed because (1) the FAC does not describe the exact terms of the warranty and (2) no warranty could have been breached because the ingredient list on the deodorant products discloses what ingredients are in the products. The first argument has no merit. Clearly, the alleged warranty is that the deodorant products were "natural." And Defendants clearly recognize that this is the alleged warranty given the argument that they present in (2). As for that second argument, it is essentially derivative of the argument made above in connection with the fraud-based claims – *i.e.*, that no reasonable consumer could be deceived by the use of the term "natural." Consistent with the above, whether there was a breach of the warranty – *i.e.*, that the deodorant products are "all natural" – is a

13

1    question of fact that cannot be resolved at the 12(b)(6) phase.

2    G.   Claim for Unjust Enrichment

3    Defendants challenge the unjust enrichment claim on the same basis as they contested the fraud-based claims – *i.e.*, "no reasonable consumer would be deceived." Mot. at 18. As discussed above, this is a question of fact that cannot be resolved at the 12(b)(6) phase.

H.   Nationwide Class

Finally, Defendants argue that, because Plaintiffs are citizens of California only, they cannot represent a *nationwide* class but at best only a *statewide* class. Defendants argue that the Court should decide this issue now, as a part of the motion-to-dismiss proceedings, and not wait until class certification. In support of this argument, Defendants cite *In re Carrier IQ, Inc. Consumer Priv. Litig.*, 78 F. Supp. 3d 1051 (N.D. Cal. Jan. 2015). There, the Court acknowledged that "it has the discretion to defer questions of [a plaintiff's] standing until *after* class certification." *Id.* at 1074 (emphasis added). The Court, however, declined to exercise that discretion and opted, as a matter of case management, to require the plaintiffs to present *now* a named class member who possessed individual standing to assert each state law's claims against the defendants. *See id.* The Court's reason for taking this approach included the fact that "[t]he number of consumers from 35 other states in which state law claims are asserted is vast relative to the claims to which the named Plaintiffs [13 different states] have standing." *Id.* The Court thus had reservations about subjecting the defendants to the expense and burden of nationwide discovery. And given the breadth of the asserted class, there was a meaningful risk that the requirements for class certification under Federal Rule of Civil Procedure 23 might not be met or that subclasses would have to be created. Thus, the Court concluded that it was best to address the issue now rather than wait for class certification. *See id.*

After *Carrier IQ* was decided, the Ninth Circuit issued its decision in *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015). In *Melendres*, the defendants argued that the named plaintiffs did not have standing to represent the claims of unnamed class members who were stopped, detained, searched *outside* of a saturation patrol effort. The Ninth Circuit stated that the defendants' argument improperly conflated standing with class certification. Admittedly,

14

> when courts have found a disjuncture between the claims of named plaintiffs and those of absent class members, they have not always classified the disjuncture consistently, some referring to it as an issue of standing, and others as an issue of class certification. Nor is the distinction always easy to discern. Even the Supreme Court has apparently applied both approaches inconsistently.

*Id.* at 1261. The Ninth Circuit, however, concluded that the issue was better addressed as part of class certification. *See id.* at 1262 ("adopt[ing] the class certification approach"). "Under the class certification approach, . . . 'any issues regarding the relationship between the class representative and the passive class members – such as dissimilarity in injuries suffered – are relevant only to class certification, not to standing.'" *Id.* at 1262. (Ultimately, the court held that, "[u]nder the class certification approach, or the standing approach for that matter, the named plaintiffs in this case . . . are adequate representatives because the named plaintiffs' claims do not 'implicate a significantly different set of concerns' than the unnamed plaintiffs' claims." *Id.* at 1263.)

Defendants argue that *Melendres* is distinguishable because the case involved a dissimilarity in injuries suffered (*i.e.*, comparing the named plaintiffs with the unnamed putative class members); in contrast, this case involves named plaintiffs who cannot bring legal claims pursuant to state laws for states where they do not reside. While this is a distinction between *Melendres* and the instant case, the distinction is not material for purposes of taking the class certification approach.

### III.  CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss or stay.

This order disposes of Docket No. 29.

**IT IS SO ORDERED**.

Dated: January 24, 2018

_____
EDWARD M. CHEN
United States District Judge

15