1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSEPH GREGORIO, et al.,

          Plaintiffs,

    v.

THE CLOROX COMPANY,

          Defendant.

Case No.  17-cv-03824-PJH

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS**

Re: Dkt. No. 38

Defendant The Clorox Company's ("Clorox") motion to dismiss or stay came on for hearing before this court on January 31, 2018.  Plaintiffs Joseph Gregorio, Patrick Quiroz, and Adam Cooper appeared through their counsel, Joel D. Smith.  Defendant appeared through its counsel, Dean N. Panos.  Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS IN PART and DENIES IN PART defendant's motion for the following reasons.

**BACKGROUND**

On October 25, 2017, plaintiffs filed their first amended complaint seeking to represent "all persons in the United States who purchased Green Works Products."  Dkt. 36, FAC ¶ 23.  Plaintiffs also seek to represent New York and California subclasses to be represented by plaintiff Gregorio and plaintiffs Quiroz and Cooper, respectively.  Id. ¶¶ 24-25.  Generally, plaintiffs allege that to capitalize on consumer demand for "natural" home cleaning products, Clorox advertises its "Green Works" cleaning products as "natural" or "naturally derived," when in fact that representation is false.  Id. ¶ 1.

United States District Court
Northern District of California

1   Plaintiffs challenge twelve of Clorox's Green Works products, including multi-

2   surface cleaners, toilet bowl cleaners, and cleaning wipes (together, the "products").

3   FAC ¶ 2.  The front label for each of these products states "green works" in large letters

4   and directly below, in somewhat smaller letters, "naturally derived."  Id. ¶ 15.  The

5   "naturally derived" representation, which is the core of plaintiffs' challenge, appears

6   above the cleaning product type (e.g., from top to bottom, "green works naturally derived

7   compostable cleaning wipes").  Id.[1]

8   The back label of each green works products has an ingredients list, which the

9   parties dispute the completeness of, and refers consumers to two websites.  Dkt. 38-1,

10  Ex. A ("Questions? Comments? Visit us at www.greenworkscleaners.com . . . For more

11  product ingredient information visit www.ingredientsinside.com.").[2]  The

12  greeworkscleaners.com website concedes that the green works products are not entirely

13  naturally derived:

14  "[T]he products are "95% to 99% naturally derived.  That
    means all of the active cleaning ingredients in our products
15  are derived from mother nature, such as filtered water, plant-
    based cleaning agents, essential oils, corn-based ethanol and
16  wood-based fibers.  The other '1% to 5%' are a combination
    of preservatives, fragrances and dyes . . . We're still working
17  hard to find natural alternatives."

18  Ex. C; FAC ¶ 20.  The ingredientsinside.com website lists each particular products'

19  ingredients and describes each ingredient's general purpose, but does not indicate

20  whether the ingredient is natural or non-natural.  Ex. B  (e.g., "Liquitint Bright Yellow Dye

21  "improve[s] aesthetic appeal . . . can be made from both synthetic and natural materials.")

22  
23  [1] Plaintiffs also include allegations about "green" in the product line's name, the labels'
    "green coloring, flowers, and leaves," and the phrase "Powerful cleaning done naturally."
24  FAC ¶¶ 15-16.  The parties' arguments, however, like plaintiffs' complaint, focus on the
    "naturally derived" representation.
25  [2] The court incorporates by reference Exhibits A-C, which show the full front and back
    label for Clorox's green works dishwashing liquid, and are copies of the two websites
26  listed on the back of the green works label. See Wright v. Gen. Mills, Inc., No. 08-1532,
    2009 WL 3247148, at *4-5 (S.D. Cal. Sept. 30, 2009) (taking judicial notice of and
27  incorporating by reference product labels and packaging items that served as the basis
    for the allegations in plaintiff's complaint); Mophie, Inc. v. Shah, No. 13-01321, 2014 WL
28  10988339, at *3 n.2 (C.D. Cal. July 24, 2014) (considering website because the
    complaint relied on the website and the authenticity of its contents were not disputed).

United States District Court
Northern District of California

1    The named plaintiffs allege that they were misled by the green works labeling.

2    Each plaintiff purchased at least one green works product because each plaintiff was

3    specifically interested in purchasing a natural cleaning product.  FAC ¶¶ 4-6.  Each

4    plaintiff relied on the term "naturally derived" and understood that it meant that the

5    product was a natural product that did not contain any synthetic or non-natural

6    ingredients.  Id.  And each plaintiff alleges that he would not have purchased the product

7    at all, or would have only been willing to pay a substantially reduced price for the product,

8    had he known that the representations were false.  Id.

9    Plaintiffs allege that the green works labeling and advertising puts forth a

10   straightforward, material, but false message that the products' only ingredients are

11   naturally derived and natural.  FAC ¶ 12.  According to plaintiffs, defendant's label

12   includes this representation because consumers, like the named plaintiffs, are willing to

13   pay a price premium for products labeled and advertised as natural.  Id. ¶ 14.  Plaintiffs

14   allege that "Consumers understand the terms 'natural' and 'naturally derived' to mean

15   'existing in nature and not made or caused by people; coming from nature;' or 'not having

16   any extra substances or chemicals added; not containing anything artificial.' "  Id. ¶ 17.

17   Pointing to defendant's own website and 20 allegedly synthetic and non-natural

18   ingredients contained in the various green works products, plaintiffs allege that the

19   products fail to meet the consumers' expectation and definition and, therefore, the labels

20   are misleading.  Id. ¶¶ 17-20; see, e.g., FAC ¶ 18(g) (green works product contains

21   "hydrogen peroxide," which is made by electrolytic oxidation of sulfuric acid . . ."; "Citric

22   Acid.  This is synthetically produced . . .").

23   Based on the above allegations, plaintiffs bring claims for (1) violation of

24   California's Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, et seq.; (2)

25   violation of California's False Advertising Law ("FAL"), Business & Professions Code §§

26   17500 et seq.; (3) violation of California's Unfair Competition Law ("UCL"), California

27   Business & Professions Code §§ 17200, et seq.; (4) violation of the Magnuson-Moss

28   Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, et seq.; (5) violation of New York's General

1   Business Law ("GBL") § 349, Deceptive Acts and Practices; (6) violation of New York's

2   GBL § 350, False Advertising; (7) breach of express warranty; (8) breach of the implied

3   warranty of merchantability; (9) unjust enrichment; (10) negligent misrepresentation; and

4   (11) fraud.  See FAC ¶¶ 34-114.

5       Clorox's motion to dismiss the complaint in its entirety is now before the court.

6                                        **DISCUSSION**

7   **A.    Legal Standard**

8       A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

9   alleged in the complaint.  Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

10  Under the minimal notice pleading requirements of Federal Rule of Civil Procedure 8,

11  which requires that a complaint include a "short and plain statement of the claim showing

12  that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be

13  dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or

14  has not alleged sufficient facts to support a cognizable legal theory.  Somers v. Apple,

15  Inc., 729 F.3d 953, 959 (9th Cir. 2013).

16      While the court must accept as true all the factual allegations in the complaint,

17  legally conclusory statements, not supported by actual factual allegations, need not be

18  accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  The complaint must proffer

19  sufficient facts to state a claim for relief that is plausible on its face.  Bell Atlantic Corp. v.

20  Twombly, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).  A claim

21  has facial plausibility when the plaintiff pleads factual content that allows the court to

22  draw the reasonable inference that the defendant is liable for the misconduct alleged."

23  Iqbal, 556 U.S. at 678 (citation omitted).  Determining whether a complaint states a

24  plausible claim for relief is "a context-specific task that requires the reviewing court to

25  draw on its judicial experience and common sense."  Id. at 679.  "[W]here the well-

26  pleaded facts do not permit the court to infer more than the mere possibility of

27  misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is

28  entitled to relief.' "  Id.  Where dismissal is warranted, it is generally without prejudice,

United States District Court
Northern District of California

1   unless it is clear the complaint cannot be saved by any amendment.  Sparling v. Daou,

2   411 F.3d 1006, 1013 (9th Cir. 2005).

3          Review is generally limited to the contents of the complaint, although the court can

4   also consider a document on which the complaint relies if the document is central to the

5   claims asserted in the complaint, and no party questions the authenticity of the

6   document.  See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007).  That is, the court

7   may consider matters that are properly the subject of judicial notice, Knievel v. ESPN,

8   393 F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of L.A., 250 F.3d 668, 688-89 (9th Cir.

9   2001), and may also consider exhibits attached to the complaint, see Hal Roach Studios,

10  Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and

11  documents referenced extensively in the complaint and documents that form the basis of

12  the plaintiffs' claims.  See No. 84 Emp'r-Teamster Jt. Counsel Pension Trust Fund v. Am.

13  W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

14  **B.     Analysis**

15         The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."

16  Cal. Bus. and Prof. Code § 17200.  "The false advertising law prohibits any unfair,

17  deceptive, untrue, or misleading advertising."  Williams v. Gerber Prod. Co., 552 F.3d

18  934, 938 (9th Cir. 2008) (citing Cal. Bus. and Prof. Code § 17500) (internal quotation

19  marks omitted).  The CLRA prohibits "unfair methods of competition and unfair or

20  deceptive acts or practices."  Cal. Civ. Code § 1770.

21         The Ninth Circuit has explained that "these California statutes are governed by the

22  'reasonable consumer' test."  Williams, 552 F.3d at 938.  "Under the reasonable

23  consumer standard, [plaintiff] must show that members of the public are likely to be

24  deceived."  Id.  "The California Supreme Court has recognized that these laws prohibit

25  not only advertising which is false, but also advertising which, although true, is either

26  actually misleading or which has a capacity, likelihood or tendency to deceive or confuse

27  the public."  Id. (internal quotation marks omitted).  Often, whether a  business practice is

28  deceptive will involve questions of fact not appropriate for decision on a motion to

United States District Court
Northern District of California

1  dismiss.  Id. at 938-39.  The same "reasonable consumer" test applies to the N.Y. GBL

2  claims.  Nelson v. MillerCoors, LLC, 246 F. Supp. 3d 666, 673 (E.D. N.Y. 2017).

3         Defendant argues that under the "reasonable consumer" standard plaintiffs' claims

4  must be dismissed because it is not probable that consumers, acting reasonably under

5  the circumstances, would have been misled by the green works "naturally derived"

6  labeling.  In support, defendant points to various "disclosures," and three class action

7  settlements involving competitors' products that used the terms "100% natural" or "all

8  natural."

9         **1.    The Class Action Settlements Fail To Show That A Reasonable**
               **Consumer Would Not Be Deceived By Green Works Labels.**
10

11        Defendant points primarily to three class action settlements involving competitor

12 companies in which those companies agreed to labeling practices that defendant

13 purportedly already employs.[3]  Specifically, those companies agreed to stop using the

14 terms "100% natural" and "all natural" and instead use the terms "naturally derived" or

15 "natural."  Those companies also agreed to provide additional ingredient information on

16 their websites.  Again, something Clorox already does.  Defendant argues that these

17 court-approved settlements show that a reasonable consumer would not be misled or

18 deceived by Clorox's "naturally derived" labeling, particularly given that one of those

19 cases was pursued and settled by the same lawyers pursuing this case.

20        Clorox's argument does have some superficial appeal.  The companies party to

21 those settlements now have strong defenses against any future class action challenging

22 their use of "naturally derived."  Defenses that Clorox does not have in this case.  Further,

23 if plaintiffs in this case are successful, Clorox may no longer be allowed to use the exact

24 same phrase as its competitors can use with theoretical impunity.  The court recognizes

25 the fundamental unfairness of that possible situation.

26

27 [3] See Vincent v. People Against Dirty, PBC, No. 16-06936, Dkt. 41 (S.D.N.Y. March 13, 2017); Rapoport-Hecht v. Seventh Generation, Inc., No. 14-9087, Dkt. No. 44-1 at 28-29
28 (S.D.N.Y. July 1, 2016), In re Honest Marketing Litig, No. 16-01125, Dkt. No. 58 (S.D.N.Y. June 30, 2017).

Clorox, however, has pointed to no authority showing that a potential for unfairness overrides the Ninth Circuit's "reasonable consumer test."  Further, private settlements cannot and do not serve as a substitute for the court's own determination regarding whether it is plausible that Clorox's labeling would deceive a reasonable consumer.   In fact, those settlements—involving different parties, litigating over different products, displaying different allegedly deceptive terms—barely amount to persuasive authority that a reasonable consumer would not be misled by the labeling at issue here. Not to mention that by their very nature settlements are a product of compromise that involve numerous variables, including each parties' litigation risks, recovery amount, etc. Defendant's argument must therefore be rejected.

### 2. The Complaint Plausibly Alleges That Green Works Labeling Is Misleading To A Reasonable Consumer.

Defendant next argues that the term "naturally derived" would not mislead a reasonable consumer because (i) in the context of cleaners, plaintiffs' definition of "naturally derived" defies common sense, and (ii) at worst, the ambiguity of the term is clarified by the rest of the labeling and Clorox's website.

As noted, the Ninth Circuit applies a "reasonable consumer test."  Generally, "whether a reasonable consumer would be deceived . . . [is] a question of fact not amenable to determination on a motion to dismiss." Ham v. Hain Celestial Grp., Inc., No. 14-CV-02044-WHO, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. Oct. 3, 2014).  "However, in rare situations a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." Id.  The present case is not one of those rare situations.

The complaint alleges facts that, if true, establish that the "naturally derived" representations misled the named plaintiffs, caused the named plaintiffs harm, and did the same to putative class members.  According to the complaint, Clorox labeled the products "naturally derived," knowing and intending for customers to rely on that representation.  Plaintiffs did in fact rely on that representation and understood that

1    representation to mean the green works products were "natural product[s] that did not

2    contain any synthetic or non-natural ingredients," FAC ¶ 6, when in fact the product

3    contained synthetic ingredients.

4        It is not unreasonable as a matter of law to expect a product labeled "naturally

5    derived" to contain no synthetic ingredients.  It is also far from unreasonable to expect the

6    same product to contain only "naturally derived" ingredients—a representation apparently

7    contradicted by defendant's own website.  While defendant appears to concede that

8    "100% natural" and "all natural" would be misleading, defendant fails to recognize that the

9    court is not free to dismiss claims because defendant chose not to use a potentially more

10   misleading phrase.  And "the phrase ['naturally derived'] may be tantamount to, or at least

11   could reasonably be understood to mean 'all natural' or '100% natural.' " Pecanha v. The

12   Hain Celestial Group, Inc., 2018 WL 534299, at *3 (N.D. Cal. Jan. 24, 2018); Segedie v.

13   Hain Celestial Grp., Inc., No. 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739, at *29-30

14   (S.D.N.Y. May 7, 2015) ("There is no rigid hierarchy that makes 'natural' a more

15   permissive label than 'organic' in all respects as a matter of law.").

16       The plausibly deceptive nature of the "naturally derived" labeling remains despite,

17   as defendant argues, the ingredient lists on the back of the label and, more dubiously in

18   the court's opinion, Clorox's website disclosures.  See Williams, 552 F.3d at 939 ("We

19   disagree with the district court that reasonable consumers should be expected to look

20   beyond misleading representations on the front of the box to discover the truth from the

21   ingredient list in small print on the side of the box.").  Though "the ingredient list . . .

22   certainly serves some purpose," it does not exist "so that manufacturers can mislead

23   consumers and then rely on the ingredient list to correct those misinterpretations and

24   provide a shield for liability for the deception."  Id.  "[R]easonable consumers expect that

25   the ingredient list contains more detailed information about the product that confirms

26   other representations on the packaging," id., not, as is the case here, contradict the

27   packaging's other representations.  A jury may ultimately find otherwise, but the court

28   cannot make that determination at this stage.

United States District Court
Northern District of California

8

1    For the aforementioned reasons, the court finds that plaintiffs have plausibly stated

2    a claim for relief under Cal. Bus. and Prof. Code §§ 17200 et seq. & 17500 et seq., Cal.

3    Civ. Code § 1750 et. seq., and the N.Y. GBL §§ 349 & 350.  Accordingly, the court

4    DENIES defendant's motion to dismiss these claims.  Because defendant's argument to

5    dismiss plaintiffs' common law warranty claims rises and falls with the above analysis, the

6    court also DENIES defendant's motion to dismiss with respect to plaintiffs' express and

7    implied warranty claims.

8         The court, however, GRANTS defendant's motion to dismiss plaintiffs' remaining

9    warranty claim brought under the MMWA.  The MMWA creates a civil cause of action for

10   consumers to enforce the terms of implied or express warranties.  See 15 U.S.C. §

11   2310(d); Daniel v. Ford Motor Co., 806 F.3d 1217, 1227 (9th Cir. 2015) ("Claims under

12   the Magnuson–Moss Warranty Act "stand or fall with . . .  express and implied warranty

13   claims under state law." (ellipses in original)).  Amongst other requirements, in order to

14   bring a cognizable claim under the MMWA, the amount in controversy of an individual

15   claim must be greater or equal to $25, see U.S.C. § 2310(d)(3)(C), and the product at

16   issue must cost more than five dollars, see 15 U.S.C. § 2302(e).  The complaint contains

17   no allegations speaking to either of those requirements.  Accordingly, plaintiffs' MMWA

18   claim is DISMISSED.  If plaintiffs believe they can amend the complaint to include facts

19   satisfying all requirements under the MMWA, then plaintiffs may do so within 28 days of

20   the date of this order.

21         **3.    The Complaint Adequately States Claims for Negligent**
            **Misrepresentation and Fraud**
22

23        The court also DENIES defendant's motion to dismiss plaintiffs' negligent

24   misrepresentation and fraud claims.

25        Defendant argues that the negligent misrepresentation claim is barred by the

26   economic loss doctrine because plaintiffs have not alleged they suffered any non-

27   monetary damage.  The court recognizes that district courts within the Ninth Circuit are

28   split on this issue.  See Broomfield v. Craft Brew All., Inc., No. 17-CV-01027-BLF, 2017

1  WL 3838453, at *9 (N.D. Cal. Sept. 1, 2017) (noting split and discussing at length).

2  However, the Ninth Circuit in an unpublished opinion has also weighed in on this issue,

3  holding "that California law classifies negligent misrepresentation as a species of fraud

4  for which economic loss is recoverable." Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys.,

5  Inc., 315 F. App'x 603, 607 (9th Cir. 2008) (citing Robinson Helicopter Co., Inc. v. Dana

6  Corp., 34 Cal.4th 979 (2004)) (internal citation omitted).   In light of that opinion, the court

7  DENIES defendant's motion to dismiss the negligent misrepresentation claim without

8  prejudice to defendant raising the argument again at the appropriate juncture.

9       Defendant also argues that plaintiffs' common law fraud claim and the fraud-based

10  claims discussed above must be dismissed because the complaint's harm related

11  allegations fail to meet Rule 9(b)'s particularity requirement.   Specifically, defendant

12  argues that though plaintiffs need only allege that a price premium was paid, under Rule

13  9(b), a plaintiff cannot adequately do so without including specific factual allegations

14  about the dollar amount plaintiffs paid for each product.   The court disagrees that this

15  level of specificity is required.   "Under California law, the economic injury of paying a

16  premium for a falsely advertised product is sufficient harm to maintain a cause of action."

17  Davidson v. Kimberly-Clark Corp., 873 F.3d 1103, 1111 (9th Cir. 2017); Ackerman v.

18  Coca-Cola Co., No. CV-0395, 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010)

19  (similar).   Courts routinely deny motions to dismiss similar actions in which the complaint

20  alleges that a price premium was paid but fails to allege the specific amount paid for each

21  product.   Compare, e.g., Vicuna v. Alexia Foods, Inc., No. C 11-6119 PJH, 2012 WL

22  1497507, at *1 (N.D. Cal. Apr. 27, 2012), with C 11-6119, Dkt. 9 (amended complaint);

23  compare Ham, 70 F. Supp. 3d at 1195, with No. 14-cv-2044, Dkt. 1 (complaint).   That is

24  exactly what plaintiffs' complaint does here.   See, e.g., FAC ¶ 54 (Plaintiffs "suffered a

25  substantial injury by virtue of buying the Green Works Products that they would not have

26  purchased absent Defendant's . . . labeling or by virtue of paying a premium price for the

27  . . . labeled Green Works Products."), FAC ¶¶ 4, 73 (similar); FAC ¶ 73 (similar).

28

1  The court, therefore, rejects defendant's Rule 9(b) argument and DENIES

2  defendant's motion to dismiss plaintiffs' fraud causes of action.[4]

3  **4.  The Court Will Not Stay The Case Under the Primary Jurisdiction Doctrine.**

4

5  In the event the court is not inclined to grant defendant's motion to dismiss,

6  defendant argues that the case should be stayed in light of the FDA's rulemaking

7  regarding "natural" foods that began in November 2015.  "Primary jurisdiction is a

8  prudential doctrine that permits courts to determine that an otherwise cognizable claim

9  implicates technical and policy questions that should be addressed in the first instance by

10  the agency with regulatory authority over the relevant industry rather than by the judicial

11  branch."  Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 760 (9th Cir. 2015) (internal

12  quotation marks omitted).  Defendant concedes that the FDA does not regulate the

13  cleaning products at issue in this case.  Accordingly, the court DENIES defendant's

14  request to stay the case.  See also Burton v. Hodgson Mill, Inc., No. 16-CV-1081-MJR-

15  RJD, 2017 WL 1282882, at *8 (S.D. Ill. Apr. 6, 2017) ("[T]he FDA's eventual formal

16  definition [of all natural] has no bearing on a reasonable consumer's perception at the

17  time this product was advertised and purchased.").

18  **CONCLUSION**

19  For the foregoing reasons, the court DENIES defendant's motion to dismiss or

20  stay in all respects, other than the request to dismiss plaintiffs' MMWA cause of action.

21  Plaintiffs may amend their complaint with respect to the MMWA claim within 28 days.[5]

22  No additional parties or claims may be added without leave of court or consent of

23  defendant.

24

25  [4] Defendant's only challenge to plaintiffs' unjust enrichment claim is based on defendant's argument that the nationwide class must be stricken.  That Rule 23 argument is

26  premature at the motion to dismiss stage.  See Pecanha, 2018 WL 534299, at *3.
    Similarly, defendant's motion to strike certain challenged ingredients does not come close

27  to satisfying the Rule 12(f) requirements and assumes defendant's definition of the term "naturally derived."

28  [5] Defendant's requests for judicial notice are DENIED as moot because the court did not rely on any of those exhibits.

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: February 6, 2018

_____

PHYLLIS J. HAMILTON
United States District Judge