# BURSOR & FISHER
### P.A.

**1990 N. California Blvd.**
**SUITE 940**
**WALNUT CREEK, CA 94596**
www.bursor.com

**L. TIMOTHY FISHER**
Tel: **925.300.4455**
Fax: **925.407.2700**
ltfisher@bursor.com

July 26, 2018

<u>Via ECF</u>

The Honorable Laurel Beeler
United States Magistrate Judge
San Francisco Courthouse, Courtroom C – 15th Floor
450 Golden Gate Ave.
San Francisco, CA  94102

   Re: *Gregorio et al. v. The Clorox Company*, Case No. 4:17-cv-03824-PHJ
      Joint Discovery Dispute Letter Motion

Dear Judge Beeler:

  I represent Plaintiffs in the above-captioned matter.  The parties hereby submit this Joint Statement pursuant to Your Honor's Discovery Order (ECF No. 69).  The parties met and conferred via email and are unable to reach agreement on the following outstanding discovery issues.

**<u>Plaintiffs' Position:</u>**

  <u>First</u>, Although Defendant has provided dates certain for production of documents in response to several of Plaintiffs' Discovery Requests, Defendant is still unable to provide Plaintiffs with a date certain by which it will produce responsive e-mails.  Fed. R. Civ. P. 34(b)(2)(B) specifies that a "production must . . . be completed no later than the time for inspection specified in the request or another reasonable time specified in response."  Accordingly, Plaintiffs respectfully request that Defendant be ordered to complete its document production, including emails, by no later than August 15, 2018.

  <u>Second</u>, Defendant refuses to produce responsive documents created prior to the beginning of the "class period" in this case, which it defines as "late 2016/early 2017."  Plaintiffs maintain their position that documents and communications prior to the "class period" are both discoverable and highly relevant to Plaintiffs' claims given that the Green Works product line has been sold since at least 2008.  Indeed, courts have long recognized that a defendant's "attempt to confine discovery to a narrow period" immediately pre- and post-dating the class period "is artificial, arbitrary and designed to avoid the production of relevant documents." *In re Seagate Tech. II Sec. Litig.*, 1993 WL 293008, at *1 (N.D. Cal. June 10, 1993).  The reason is simple: "[a] class period is delimited in order to identify the individuals who claim membership

in the class, not to identify the conduct that injured them" and "this is why it is called the '*Class Period*,' not the 'Liability Period.'"  *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 643 n.27 (S.D.N.Y. 2007) (emphasis in original).  Courts recognize that "[a]ny information that sheds light on whether class period statements were false or materially misleading is relevant," and that both pre- and post-class period information is relevant.  *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001); *see also Brody v. Zix Corp.*, 2007 WL 1544638 (N.D. Tex May 25, 2007) (holding that "the proposed class period" – the approximate period defendants here advocate – "does not determine the period of relevancy for discovery purposes").

Here, documents pertaining to the use of the terms "natural" or "naturally derived" on product labels, including the effect of those terms on consumers, would clearly be relevant, even if created before the class period.  As another example, any documents that pertain to, or informed, Defendant's decision to use the terms "natural" or "naturally derived" on products at issue would be relevant, even if those documents were created prior to the class period.  Moreover, Defendant is unable to provide any specific burdens that such searches would impose such as cost or man-hours.  Plaintiffs respectfully request that Defendant be required to search for responsive documents, including emails, dating back to the beginning of the Green Works product line.

**Defendant's Position:**

Brief Background

Clorox makes Green Works household cleaning products ranging from toilet bowl cleaners to bleach.  They are currently labeled as "naturally derived" to signify that 95 to 99 percent of the ingredients come from natural sources. That explanation is provided at www.greenworkscleaners.com and www.IngredientsInside.com, both of which are listed on the packaging of every Green Works product in case consumers want to learn more about the ingredients and Clorox's standard of "naturally derived."

Before late 2016 (when the packaging label changed), Green Works products had a specific percentage for the "naturally derived" claim.  So, for example, Green Works Compostable Cleaning Wipes was previously labeled as "99% naturally derived" (instead of the current label, "naturally derived").  Plaintiffs' theory of the case is that this labeling change — which began appearing on products that were shipped in late 2016 and early 2017 — was deceptive.  As Plaintiffs put it in their amended complaint, "The Green Works Compostable Cleaning Wipes are now labeled 'natural derived' without any qualifying percentage. These labeling changes were highly misleading to consumers and strongly indicate that Clorox knew that it was making false statements to consumers and that consumers would find it material if even 1% of the Products were not natural or naturally derived."  FAC at ¶ 21, ECF No. 35.

In response to Plaintiffs' discovery requests, Clorox so far has produced the following categories of documents and information:

(1) Various Green Works packaging label (both before and after the labeling change);

(2) Monthly unit sales of Green Works products dating back to 2013;

(3) Monthly sales in dollars dating back to 2013;

(4) Sales data of Green Works product collected by IRI, a third-party company that specializes in retail sales, dating back to 2013;

(5) Wholesale prices charged by Clorox to its customers;

(6) Suggested retail price of Green Works products dating back to 2015;

(7) Consumer complaints dating back to 2015;

(8) Internal and highly confidential internal documents dating back to 2015, including

   a. business plans
   b. marketing and consumer segmentation studies;
   c. studies regarding social media efforts;
   d. growth idea and strategy presentations;
   e. consumer survey results and analyses;
   f. third-party studies and surveys on the natural consumer product market;
   g. "deep dive" strategy documents;
   h. in-home interview results and analyses;

(9) List of Clorox's customers;

(10) List of key Clorox individuals who oversee the Green Works brand;

(11) List of advertising agencies used by Clorox.

First Issue: Completion Date for Emails

In addition to producing all of the documents and information listed above, Clorox also provided specific dates (mostly July 31 or August 15) for finishing the production of documents in response to all 61 document requests. Clorox added the caveat that it is still in the process of collecting and starting to review potentially responsive emails, and that it would provide an update on when it may finish the review and production of responsive emails. Clorox is still in the process of assessing the email files, and hope to provide a completion date of emails within the next two weeks.

But a completion date of August 15, 2018 for the production of emails is not realistic. Nor is it necessary. The fact discovery cut-off is nearly a year away (July 18, *2019*), and the class

certification hearing will not occur until May 29, 2019.  Clorox intends to provide an update on the emails within two weeks, and will work expeditiously and cooperatively with Plaintiffs to finish the production.

Second Issue: Time Period for Production of Documents

In their complaint, Plaintiffs have not specified a class period, but Clorox believes that the class period should begin when the allegedly deceptive packaging ("naturally derived" without any percentage qualifier) began appearing on store shelves, which is late 2016 or early 2017 depending on the specific product.

Clorox has repeatedly advised Plaintiffs that it is willing to produce documents before the class period for relevant topics.  For example, Clorox has said that it will look for documents relating to the labeling change, which obviously predate the class period of late 2016/early 2017. Indeed, Clorox has already produced financial data going back to 2013, and internal marketing studies and surveys dating back to 2015.

But Clorox should not be compelled to search for documents dating back years before the challenged packaging appeared on the market.  Such dated documents would have no relevance, and certainly, would not be proportional to the needs of the case. The proportionality requirement under the Federal Rules is particularly important in class action cases because discovery is grossly asymmetrical: there is little information that defendants can obtain from plaintiffs, while plaintiffs can propound burdensome discovery requests without any fear of reciprocal requests.

In short, Clorox's production of relevant pre-class period documents — dating back to 2013 for financial data and 2015 for internal marketing documents — is more than sufficient to address Plaintiff's claim that the late 2016/early 2017 packaging change is deceptive.

Very truly yours,

L. Timothy Fisher