UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JOSEPH GREGORIO, et al., | Case No. 17-cv-03824-PJH (LB) |
| Plaintiffs, | |
| v. | **ORDER ADDRESSING DISCOVERY DISPUTES REGARDING PRIVILEGE AND WORK PRODUCT** |
| THE CLOROX COMPANY, | |
| Defendant. | Re: ECF No. 82 |

## INTRODUCTION

The putative class action is about defendant Clorox Company's allegedly mislabeling certain products that it sells as "natural" or "naturally derived" when they actually contain ingredients that are synthetic and non-natural. The plaintiffs and Clorox raise four categories of discovery disputes with respect to a number of documents that Clorox is withholding on the grounds of attorney-client privilege and work-product protection.[1] The court provides the following guidance to the parties and directs them to further meet and confer (in person if possible, but at least by telephone if not) for no less than one hour to try to resolve their disputes.

---

[1] Joint Letter Br. – ECF No. 82. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 17-cv-03824-PJH (LB)

# ANALYSIS

## 1. Work Product for Documents Created Before This Litigation Was Anticipated

"'The work-product rule is a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation.'" *Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-00226-YGR(JSC), 2016 WL 2606830, at *1 (N.D. Cal. May 6, 2016) (internal ellipsis omitted) (quoting *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)). "'The phrase in anticipation of litigation extends beyond an attorney's preparation for a case in existing litigation, and includes documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated.'" *Id.* at *7 (emphasis removed) (quoting *ACLU of N. Cal. v. Dep't of Justice*, 70 F. Supp. 3d 1018, 1029–30 (N.D. Cal. 2014)). "However, there must be some identifiable prospect of litigation that led to the documents' creation." *Id.* (quoting *ACLU*, 70 F. Supp. 3d at 1031–32). "In contrast, documents that merely set forth a general strategy or template that might relate to or be relevant to future litigation are not prepared in anticipation of a particular trial." *Id.* "A template that does not pertain 'to a specific claim or consist of more than general instructions to its attorneys'" is not work product." *Id.* (internal brackets omitted) (quoting *ACLU*, 70 F. Supp. 3d at 1032).

The plaintiffs state that Clorox received their demand letter on February 2, 2017, and the plaintiffs filed their initial complaint on July 6, 2017.[2] The plaintiffs claim that Clorox asserts work-product protection over 68 documents that were created as far back as 2013, long before this litigation was anticipated.[3] The plaintiffs argue that the documents thus could not have been created in anticipation of litigation.[4] Clorox responds that while this litigation began in 2017, the use of the term "natural" has been a flashpoint for litigation generally over the past half decade.[5] Clorox claims that it has faced numerous threats of litigation concerning the word "natural" on

---

[2] *Id.* at 1.
[3] *Id.*
[4] *Id.*
[5] *Id.* at 4.

ORDER – No. 17-cv-03824-PJH (LB)   2

other products in its portfolio over the past several years and thus "potentially anticipated litigation over the use of the word 'natural' on Green Works product[s]."[6] Clorox does not identify any specific threats of litigation, does not claim that it reasonably anticipated any specific litigation from these threats, and does not claim that it ever was actually sued.

The fact that the use of the term "natural" has been a flashpoint for litigation generally does not establish that the documents in question are entitled to work-product protection. *Cf. Hatamian*, 2016 WL 2606830, at *7 (denying work-product protection for documents that "were created for litigation generally, without reference to any particular claim. The mere possibility of future litigation is not enough."). With that guidance, the court directs the parties to further meet and confer regarding whether Clorox can assert a claim that the documents in question were created because of the prospect of some particular litigation.[7]

## 2. Work Product for Non-Attorney Documents

The plaintiffs argue that Clorox assets work-product protection over nine documents authored by non-attorneys working outside of Clorox's legal department before this litigation began.[8] Clorox responds that the documents "incorporate 'legal advice from Clorox in-house counsel regarding labeling of Green Works cleaning products' and attach several documents authored by attorneys."[9] Clorox's response addresses the wrong issue. The fact that documents may have incorporated legal advice does not entitle them to work-product protection (as opposed to, e.g., attorney-client privilege). Rather, to be entitled to work-product protection, a document must have been created because of the prospect of anticipated litigation. *United States v. Torf (In re Grand Jury Subpoena)*, 357 F.3d 900, 907–08 (9th Cir. 2004). With that guidance, the court directs the

---

[6] *Id.*

[7] Clorox cites *Ocean Mammal Institute v. Gates*, No. 07-00254 DAE-LEK, 2008 WL 2185180 (D. Haw. May 27, 2008), a case where the defendants had previously been sued in the past few years with respect to the programs at issue. *Id.* at *13. Clorox does not assert a similar basis for reasonably anticipating litigation.

[8] Joint Letter Br. – ECF No. 82 at 2.

[9] *Id.* at 4.

ORDER – No. 17-cv-03824-PJH (LB)   3

1  parties to further meet and confer regarding whether Clorox can assert a claim that the documents
2  in question were created because of the prospect of some particular litigation.

### 3. Attorney-Client Privilege for Spreadsheets

The plaintiffs argue that Clorox assets attorney-client privilege over 64 Excel spreadsheets that were never communicated to or from an attorney (or, in several cases, to or from anyone at all).[10] Clorox does not dispute that the spreadsheets in question were not communicated to or from an attorney (as opposed to, presumably, non-attorney employees).[11] Rather, Clorox responds that the spreadsheets contain legal advice authored by its in-house counsel and argues that the mere fact that the legal advice was included in spreadsheets, as opposed to an email or a Word document, does not render it non-privileged.[12] It is not immediately clear whether Clorox is claiming that the entirety of the spreadsheets reflects legal advice or whether only portions of the spreadsheets do, or whether it is redacting only those portions of the spreadsheets that reflect legal advice and producing the rest or whether it is withholding the entire spreadsheets. Clorox is correct that privileged communications between an attorney and client do not lose their privileged character merely because those communications are stored in a spreadsheet. The fact that spreadsheets might include privileged communications does not necessarily render the entirety of the spreadsheets privileged, however, given that the spreadsheets themselves were never communicated to or from an attorney. With that guidance, the court directs the parties to further meet and confer regarding the basis for Clorox's claim of attorney-client privilege.[13]

---

[10] Joint Letter Br. – ECF No. 82 at 2.

[11] *See id.* at 4–5.

[12] *Id.*

[13] Clorox cites two cases, *Gen-Probe Inc. v. Becton, Dickinson & Co.*, No. 09cv2319 BEN NLS, 2012 WL 3762447 (S.D. Cal. Aug. 29, 2012), and *Ideal Electric Co. v. Flowserve Corp.*, 230 F.R.D. 603 (D. Nev. 2005), for the proposition that different drafts of communications to attorneys are still protected under the attorney-client privilege. Those cases involved communications between clients and attorneys attaching successive drafts of documents. *Gen-Probe*, 2012 WL 3762447, at *3 (client and attorney communicated successive drafts of letter); *Ideal*, 230 F.R.D. at 607–08 (client and attorney communicating successive drafts of affidavit). Clorox does not claim here that it communicated different drafts of these spreadsheets to attorneys; instead, its claim is that the

### 4. Attorney-Client Privilege for Emails Between Non-Attorneys

The plaintiffs argue that Clorox asserts attorney-client privilege over four emails between non-attorneys.[14] Clorox responds that the emails attached the spreadsheets discussed in the previous section and thus relayed the legal advice included in those spreadsheets and therefore are privileged. In addition to the issues raised above about the privileged or non-privileged nature of the underlying spreadsheets, it is not immediately clear whether the parent emails at issue have independent content, whether Clorox is withholding the parent emails, and, if so, what its basis is for doing so. It is also not clear whether the employees who were sending these emails did so in order to enable Clorox's attorneys to provide legal advice and understood the communications were to be treated as confidential. *Cf. Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 444 (N.D. Cal. 2010) (relevant inquiry in determining privilege over communications between non-attorney corporate employees is "whether: 1) the communication was within the scope of the employee's corporate duties; and 2) the employee was aware that the communication was made in order to enable [corporation]'s attorneys to provide legal advice to the corporation and understood that the audit to which the communication related was to be treated as confidential"). The court directs the parties to further meet and confer regarding the basis for Clorox's claim of attorney-client privilege regarding these emails in conjunction with their meet and confer regarding the underlying spreadsheets.

## CONCLUSION

The court directs the parties to further meet and confer (in person if possible, but at least by telephone if not) for no less than one hour to try to resolve their disputes. If the parties are unable

---

spreadsheets contain communications and legal advice from its attorneys. *See* Joint Letter Br. – ECF No. 82 at 4–5. In that case, the privileged or non-privileged nature of each spreadsheet stands on its own; there is no blanket "draft" rule of privilege that applies.

[14] *Id.* at 3.

ORDER – No. 17-cv-03824-PJH (LB)      5

to resolve their disputes, they may submit a further joint letter brief within one week, i.e., by February 6, 2019.

**IT IS SO ORDERED.**

Dated: January 30, 2019

_____
LAUREL BEELER
United States Magistrate Judge