United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JOSEPH GREGORIO, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE CLOROX COMPANY,<br><br>    Defendant. | Case No. 17-cv-03824-PJH (LB)<br><br>**DISCOVERY ORDER**<br>Re: ECF No. 108 |

## INTRODUCTION

In this putative class action, the plaintiffs challenge the defendant Clorox Company's allegedly mislabeling certain Clorox "Green Works" products as "natural" or "naturally derived" when they actually contain ingredients that are synthetic and non-natural.[1] The plaintiffs bring claims for violations of California and New York false-advertising, consumer-protection, and unfair-competition laws, and claims for breach of express and implied warranties, unjust enrichment, negligent misrepresentation, and fraud.[2]

---

[1] First Amended Complaint ("FAC") – ECF No. 35 at 2 (¶ 1). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 14–24 (¶¶ 34–114). The district judge dismissed the plaintiffs' claim for a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, for failure to plead an amount in

ORDER – No. 17-cv-03824-PJH (LB)

The court's earlier orders describe the parties' dispute.[3] Boiled down, the parties dispute whether Clorox can assert attorney-client privilege over certain spreadsheets (something that Clorox calls "claims matrixes") that detail the claims that Clorox's in-house counsel approves for use with that particular product.[4] The court reviewed five spreadsheets that Clorox submitted for *in camera* review and finds that Clorox has established that the redacted content of the spreadsheets has privileged material. But it has not established other elements of privilege (such as author and maintaining confidentiality). This order specifies the areas where Clorox must support its contentions and gives Clorox 14 days to submit a supplemental declaration.

## STATEMENT

### 1. The Spreadsheets

The spreadsheets at issue are "claims matrix" spreadsheets.[5] For each Green Works product, there is a "claims matrix" spreadsheet that details what claims are approved (or not approved) by Clorox's in-house legal department for use with that particular product.[6] Clorox's in-house advertising counsel submitted a declaration that she has written comments on the spreadsheets and/or approved or rejected claims.[7] The "claims matrix" spreadsheets are "living and evolving documents that resided in a shared drive that a select group of Clorox employees would review to obtain legal advice provided by Clorox's in-house lawyers."[8] Clorox's in-house advertising counsel "viewed the claims matrix spreadsheet as a vehicle to communicate to certain personnel within Clorox what claims have been legally approved and what have not been approved."[9] Clorox

---

controversy for an individual claim of at least $25 and failure to plead a product cost of more than $5. Order – ECF No. 52 at 9. The plaintiffs did not amend the complaint.

[3] Order – ECF No. 83; Order – ECF No. 93; Order – ECF No. 102.

[4] Nasseri-Asghar Decl. – ECF No. 107-3 at 2 (¶ 3).

[5] Nasseri-Asghar Decl. – ECF No. 96-5 at 3 (¶ 3).

[6] *Id.*

[7] *Id.*

[8] *Id.* (¶ 4).

[9] *Id.*

personnel typically reviewed the spreadsheets on the shared drive but sometimes saved them on their computers or emailed the claims matrices to other Clorox colleagues.[10]

In house counsel also provided the following information about the redactions.

> "5. The claims matrix spreadsheets incorporate or refer to analysis set forth in 'claims support documents,' which Clorox Research & Development employees write at the direction of in-house attorneys for the purpose of communicating substantiation data and other support information to enable Clorox in-house counsel to perform a legal analysis, provide legal advice, and assess litigation risk. Accordingly, Clorox considers these memoranda to be attorney-client privileged.
>
> "6. I understand that Clorox has withheld two such claims documents pertaining to the challenged Green Works products as privileged and constituting attorney work product. I have reviewed both documents. These memoranda were prepared at the request of Clorox's in-house counsel, and they reflect proposed claims substantiation data and other support information from Clorox Research & Development employees who worked on the Green Works products to in-house Clorox legal counsel so that such counsel could assess whether such claims were adequately substantiated in accordance with laws and assess litigation risk associated with such claims.
>
> "7. I also understand that the Plaintiffs have raised questions about the 'Claim Support Tab' referenced in some of the claims matrix spreadsheets. 'Claim Support Tab' is the location in which such privileged claims support documents are housed for ongoing reference by Clorox in-house counsel as the need to arises to revisit and re-analyze legal conclusions previously surmised. In this case, the claims support documents would be the two claims memoranda referenced in paragraph 6.

Clorox's former Director of Marketing was deposed and provided the following testimony:

Q. Who creates a claims matrix?

A. I am unsure who is the originator of those documents.

Q. Do you know what position would normally be in charge of creating a claims matrix?

A. I know that R & D has a large responsibility for it, but I am unsure if they are the ones that always originate the document.

. . . .

Q. So you don't know who worked on the claims matrixes?

A. I don't know who — who created the original claims matrix for Green Works.

---

[10] *Id.*

Q. But in general, it would have been people working in – in marketing and R & D?

[objection]

A. To create a claims matrix, there would have to be some conversations between R & D and marketing at some point.

Q. Okay. And those would be the departments or divisions primarily responsible for creating those documents?

[objection]

A. They — we do a lot of very collaborative work at Clorox so I do — it wouldn't — usually not just be those two groups, like there could be other groups that would be involved in . . .

Q. Can you think of other groups that would have been involved in creating a claims matrix for the Green Works product line?

A. Our regulatory department.

Q. Okay.

A. Our legal department.

Q. And what role would the legal department or regulatory department have in creating the claims matrixes?

A. They would discuss with — with the team about what they thought were the — the characteristics to think about when putting something on marketing materials or packaging materials to make sure that it is something that we could substantiate.

Q. So would that be after the creation of the claims matrix, Legal or Regulatory would review it?

A. I am not sure at what point in the process that they review it.

. . . .

Q. And so when you were asked to provide input for a claims matrix, was this someone senior to you who would have asked you to provide that input?

A. I think it's just nor — a normal part of the — the product development process.

Q. Okay.

A. So . . .

Q. It's not something that Legal asked you to do specifically?

A. No.[11]

---

[11] Connor Dep. – ECF No. 96-6 at 3 (pp. 62:7–16), 4–6 (pp. 63:14–65:7), 7–8 (67:24–68:10).

ORDER – No. 17-cv-03824-PJH (LB)   4

The court reviewed five spreadsheets. For the spreadsheets that contain individual names (or initials) and dates in the "Legal Approved By/Date" column, Clorox does not identify these individuals more specifically or state that they are attorneys.[12] For the spreadsheets that contain individual names (or initials) and dates in the "Legal Approved By/Date column, Clorox does not identify these individuals more specifically or state that they are attorneys. [For the spreadsheets that contain individual names (or initials) and dates in the "Legal Approved By/Date column, Clorox does not identify these individuals more specifically or state that they are attorneys.

## 2. Relevant Procedural History

On April 29, 2019, the court held that it could not evaluate Clorox's claim of privilege.[13] The relevant part of the order is as follows.[14]

> The parties do not dispute that information in a spreadsheet — like documents in a review platform or repository — can be privileged. The parties agree that Clorox has the burden of establishing whether the redacted information is privileged.
>
> On this record, the court cannot evaluate Clorox's claim of privilege in part based on the following issues.
>
> First, Clorox has not identified who created the matrices, who accessed them, whether those accessing them knew that the matrices had privileged content, or whether they kept the privileged content confidential or instead shared the spreadsheet. This implicates whether Clorox has established privilege, and if it did, whether it waived it.
>
> A case that Clorox cites about redaction — *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209 (N.D. Ill. 2013) — undermines its position on privilege.[15] In *RBS,* as here, the plaintiffs (there, the counter-plaintiffs) sought to compel the defendant (there, the counter-defendant) to produce certain spreadsheets. *Id.* at 216. There, as here, the defendant (there, the counter-defendant) claimed that the spreadsheets contained ACP material. *Id.* There, as is possibly true here, the spreadsheets were not actually

---

[12] *See* Nasseri-Asghar Decl. – ECF No. 107-3.

[13] Order – ECF No. 102 at 5.

[14] *Id.* at 5–8. The footnotes in the quoted portion of the April 29 order are the footnotes from that order. The numbering is different because the footnotes are sequential to the earlier footnotes in this order.

[15] Clorox cites the case in support of its argument regarding redaction, discussed below.

ORDER – No. 17-cv-03824-PJH (LB)   5

communicated to or from attorneys. *Id.* at 220. The court ordered an *in camera* review. *Id.* at 216.

The court noted that "RBS [the counter-defendant] fails to identify the author or recipient, if any, for a majority of the documents listed on its privilege log. This oversight significantly limits the Court's ability to find that documents are protected under the attorney-client privilege." *Id.* at 218. "The Court finds that the deficiencies in RBS's privilege log make it nearly impossible for RBS to uphold its claims of attorney-client privilege. Without a complete list of who received certain documents, for example, there is no way to know if the communications were kept confidential, and the Court cannot find that the documents are protected by attorney-client privilege." *Id.* at 219. Other than a handful of documents, the court held that the spreadsheets were not privileged. *Id.*

The *RBS* counter-defendant made an argument like Clorox's, namely, that "it 'incorporated counsel's advice and mental impressions into various documents,' including the risk ratings, charge-off analyses, and other calculations contained in the disputed spreadsheets." *Id.* at 219–20. The court rejected that argument, holding that "[t]hese documents are not protected under the attorney-client privilege, even though RBS suggests that they might be, because they are not communications to or from an attorney, nor is there any indication that they were intended to be confidential." *Id.* at 220.

If ultimately Clorox cannot identify more specifically that a lawyer was the author of the disputed content and that the confidentiality of the content was maintained, *RBS* may persuade that Clorox has not shown that the redacted information is privileged. But as the court said at the hearing, it may be that the unredacted information shows that a lawyer (even if not a specific lawyer) made the communication and that the information remained confidential. The court thus does not decide the issue definitively now and instead sets forth a process (below) to illuminate the facts.

Second, in addition to Clorox's failure to identify that attorneys wrote the redacted content and kept it confidential, it has not shown that such an attorney was offering legal advice, as opposed to business advice. The depo testimony Clorox cites — "Q. And what role would the legal department or regulatory department have in creating the claims matrixes? A. They would discuss with — with the team about what they thought were the — the characteristics to think about when putting something on marketing materials or packaging to make sure that it is something that we could substantiate"[16] — perhaps tips more toward business advice than legal advice. (What to put on marketing materials or packaging is squarely business, and based on this testimony, the attorneys may not be providing legal advice about the legal consequences of claims XYZ and instead may be providing business input about whether claim XYZ is true.) Given the process set forth below to illuminate

---

[16] Connor Dep. – ECF No. 96-6 at 5–6 (pp. 64:19–65:2).

ORDER – No. 17-cv-03824-PJH (LB)  6

the actual content and confidentiality, the court does not reach the issue now but flags it for Clorox's consideration.

Given these issues, the court arguably could hold now that Clorox has not met its burden to establish privilege (both by author and content) and lack of waiver (assuming privilege). But given the sensitivities that surround attorney-client communications, the court will review a subset of the matrices after the parties engage in the following process.

First, as the plaintiff pointed out in the letter brief, the column titled "Legal Approved By/Date" is fully redacted.[17] Presumably that column contains only non-privileged names and dates for when each claim was approved.[18] Providing that column, unredacted, presumably will provide insight into the author of the comments. At the hearing, Clorox said that it could live with producing the author/date information. (It can redact any privileged content.)

Second, Clorox must provide a privilege log that comports with this court's standing order:

> **3. Privilege Logs.** If a party withholds material as privileged, *see* Fed. R. Civ. P. 26(b)(5) and 45(d)(2)(A), it must produce a privilege log that is sufficiently detailed for the opposing party to assess whether the assertion of privilege is justified. The log must be produced as quickly as possible but no later than fourteen days after the party's disclosures or discovery responses are due unless the parties stipulate to, or the court sets, another date. Unless the parties agree to a different logging method, privilege logs must contain the following: (a) the title and description of the document, the number of pages, and the Bates-number range; (b) the subject matter or general nature of the document (without disclosing its contents); (c) the identity and position of its author; (d) the date it was communicated (or prepared, if that is the more relevant date); (e) the identity and position of all addressees and recipients of the communication; (f) the document's present location; (g) the specific basis for the assertion that the document is privileged or protected (including a brief summary of any supporting facts); and (h) the steps taken to ensure the confidentiality of the communication, including an affirmation that no unauthorized persons received the communication.[19]

With a good privilege log, a plaintiff can assess whether information is privileged and avoid *in camera* review, and ultimately, it aids any *in camera* review. *See Helm v. Alderwoods Grp., Inc.*, No C 08–01184 SI, 2010 WL 2951871, at *1 (N.D. Cal. Jul. 27, 2010) ("The court agrees with plaintiffs that, without the names of the author(s) and recipient(s) of each document, plaintiffs cannot determine whether the attorney-client privilege applies.").

Third, if after a review of the privilege log, the plaintiffs contest the withheld information, then they can identify five spreadsheets for Clorox to produce for the

---

[17] Joint Letter Br. – ECF No. 96-4 at 3.

[18] *Id.* (making this point).

[19] Standing Order – ECF No. 69-1.

ORDER – No. 17-cv-03824-PJH (LB)　　　7

court's *in camera* review. *Cf. Desert Survivors v. U.S. Dep't of Interior,* 231 F. Supp. 3d 368, 370 (N.D. Cal. 2017) (allowing *in camera* review of a sample of 10 documents (from a total of 55) selected by the plaintiff after the defendant produced a more detailed privilege log). The parties also must submit a joint letter brief that complies with the court's discovery procedures and that contains their respective arguments about the withheld documents. *Id.* (ordering a similar process).[20]

The court ordered the following: "(1) Clorox must produce the redacted column 'Legal Approved By/Date' to show author and date; (2) Clorox must produce, and the plaintiffs must review, a revised privilege log that comports with the undersigned's standing order; and (3) if this process does not resolve the dispute, then the plaintiffs may select five spreadsheets for the court's *in camera* review."[21] (The court also held that Clorox could not unilaterally redact information from the spreadsheets that it deemed unrelated to the "natural" claims in this lawsuit.[22])

Clorox then emailed the court five spreadsheets in PDF format.[23] They appeared identical.[24] The court set forth a process so that five different spreadsheets in native and PDF format were produced for *in camera* review.[25]

The court held a hearing on June 28, 2019.

## ANALYSIS

**1. Attorney-Client Privilege**

The plaintiffs challenge two categories where Clorox has asserted attorney-client privilege: (1) Clorox's redactions in the matrices, and (2) documents stored under a claims-support tab in the matrices.

---

[20] *Id.*

[21] Order – ECF No. 102 at 10–11.

[22] *Id.* at 8–9 ("[O]n this record, given the matrices at issue and over-redactions by Clorox that render the productions unintelligible [footnote omitted], the court follows the weight of authority in this district and disallows the redactions based on Clorox's unilateral assessment of relevance") (citing *Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST (SK), 2018 WL 833085, at * 3 (N.D. Cal. Feb. 7, 2018) (collecting cases)).

[23] Order – ECF No. 111 at 1.

[24] *Id.*

[25] *Id.* at 2.

ORDER – No. 17-cv-03824-PJH (LB)   8

### 1.1 Clorox's Redactions

Clorox has redacted content in a column titled "Addn'l Comments." The issues surrounding Clorox's redactions are (1) who created the matrices, (2) whether the redacted information related to legal advice from in-house attorneys, (3) who accessed the matrices, (4) whether those accessing the matrices knew that they had privileged content, and (5) whether they kept the privileged content confidential or instead shared the spreadsheet.[26]

For point 1 (who created the matrices), apparently a paralegal created and maintained the template.[27] Clorox must submit a declaration to back that contention. There is also the issue of who input the redacted content, and that issue is addressed in the analysis of point 2.

For point 2 (whether the redacted information is legal advice from in-house attorneys), the first subpoint is, who wrote the comments. According to the plaintiffs, Clorox has said that it does not know who wrote the redacted comments but said that "it believes that the comments were written by lawyers and, in some cases, business employees who were asking Clorox's legal department for advice."[28] Clorox responds that its in-house counsel established this point. She practically does: she said that the matrices memorialize legal advice and are used to ask for or receive advice,[29] but her comments are general and not specific. As discussed below, the content is privileged, and thus the in-house counsel ought to be able to say that the authors of the redacted comment are lawyers giving legal advice or business people seeking legal advice. Clorox must submit a declaration to back up its contention. *See Helm v. Alderwoods Grp., Inc.,* No. C 08–01184 SI, 2010 WL 2951871, at *1 (N.D. Cal. Jul. 27, 2010) ("The Court agrees with plaintiffs that, without the names of the author(s) and recipient(s) of each document, plaintiffs cannot determine whether the attorney-client privilege applies.").

---

[26] Order – ECF No. 102 at 5.

[27] Joint Letter Br. – ECF No. 108 at 3.

[28] *Id.* at 1.

[29] Nasseri-Asghar Decl. – ECF No. 107-3 at 2–3 (¶¶ 3–4).

ORDER – No. 17-cv-03824-PJH (LB)        9

United States District Court
Northern District of California

Again on point 2, the second subpoint is whether the redacted content shows that lawyers are giving advice or business people are asking for legal advice. The court's review of the spreadsheets shows legal advice that — if the other factors are met — is privileged.

For point 3 (who accessed the matrices), Clorox's in-house counsel says that a "select group of Clorox employees" reviewed the matrices, and said that Clorox "viewed the claims matrix spreadsheet[s] as a vehicle to communicate to certain personnel within Clorox what claims have been legally approved and what have not been approved."[30] This is not the same as saying that people viewed the redacted content to get or give legal advice. Clorox must submit a declaration to back up its contention.

For points 4 and 5 (whether those accessing the matrices knew that they contained privileged content and whether they kept the content confidential or instead shared it), Clorox says only that the employees viewed the spreadsheets and sometimes shared them with other Clorox employees.[31] That is not sufficient. Absent a more specific declaration, Clorox has not shown that it kept legal advice confidential. It must submit a declaration to show that it did.

### 1.2 "Claims Support" Tabs

The plaintiffs point out references in the matrices to claims documents, claims-substantiation documents, and claim-support tabs and suggest that there are documents that Clorox is not producing.[32] Clorox's in-house counsel describes that the memoranda filed under the tabs are written "at the direction of in-house attorneys for the purpose of communicating substantiation data and other support information to enable Clorox in-house counsel to perform a legal analysis, provide legal advice, and assess litigation risk."[33] She also explains that the "'Claim Support Tab' is the location in which such privileged claims[-]support documents are housed for ongoing reference by Clorox in-house counsel as the need arises to revisit and re-analyze legal conclusions

---

[30] Nasseri-Asghar Decl. – ECF No. 96-5 at 3 (¶ 4).

[31] *Id.*

[32] Joint Letter Br. – ECF No. 108 at 2.

[33] Nasseri-Asghar Decl. – ECF No. 107-3 at 3 (¶ 5).

previously surmised. In this case, the claims[-]support documents would be the two claims memoranda [that have been identified in the privilege log]."[34]

In-house counsel's declaration adequately establishes that the claims-support documents are privileged, at least regarding (1) the creator of the content, and (2) whether the redacted information related to legal advice from in-house attorneys. It does not reach points three through five: (3) who accessed the matrices, (4) whether those accessing the matrices knew that they had privileged content, and (5) whether they kept the privileged content confidential. It may be that this analysis is easier than the "redacted content" analysis if the content was accessible only to in-house attorneys. In any event, Clorox must submit a declaration regarding points three through five.

## 2. Motion to File Under Seal

The plaintiffs filed Clorox's in-house counsel's declaration and an email chain under seal because Clorox designated the information confidential.[35]

Civil Local Rule 79-5 requires the designating party—in this case, Clorox—to file a declaration establishing that the three documents are sealable. Specifically, Civil Local Rule 79-5(e) provides:

> **(e) Documents Designated as Confidential or Subject to a Protective Order.** If the Submitting Party is seeking to file under seal a document designated as confidential by the opposing party or a non-party pursuant to a protective order, or a document containing information so designated by an opposing party or a non-party, the Submitting Party's declaration in support of the Administrative Motion to File Under Seal must identify the document or portions thereof which contain the designated confidential material and identify the party that has designated the material as confidential ("the Designating Party"). The declaration must be served on the Designating Party on the same day it is filed and a proof of such service must also be filed.
>
> (1) Within 4 days of the filing of the Administrative Motion to File Under Seal, the Designating Party must file a declaration as required by subsection 79-5(d)(1)(A) establishing that all of the designated material is sealable.

---

[34] *Id.* (¶ 7).

[35] Pl. Admin. Mot. to Seal – ECF No. 107.

ORDER – No. 17-cv-03824-PJH (LB)　　　　11

(2) If the Designating Party does not file a responsive declaration as required by subsection 79-5(e)(1) and the Administrative Motion to File Under Seal is denied, the Submitting Party may file the document in the public record no earlier than 4 days, and no later than 10 days, after the motion is denied. A Judge may delay the public docketing of the document upon a showing of good cause.

Under the local rules, Clorox had four days to respond to the plaintiff's administrative motion to seal. Clorox did not respond within four days.[36] At the hearing, the court noted that the material was general and not specific (unlike the spreadsheets themselves) and thus was not sealable under Civil Local Rule 79-5 and the governing legal standards. Clorox did not advance a contrary position, and the court's discovery orders have excerpted the information in detail. Given that the court gave Clorox several opportunities to provide information to support sealing, the court denies the motion to seal.

## CONCLUSION

This disposes of ECF Nos. 107 and 108. Clorox may submit a supplemental declaration in 14 days.

**IT IS SO ORDERED.**

Dated: June 28, 2019

LAUREL BEELER
United States Magistrate Judge

---

[36] *See* Docket.